[No. 26069. *En Banc.* June 4, 1936.]

THE STATE OF WASHINGTON, *on the Relation of Smith Troy, as Prosecuting Attorney for Thurston County, Appellant,* v. LUMBERMEN'S CLINIC, *Respondent and Cross-appellant.*[1]

[1]Reported in 58 P. (2d) 812.

386

*Smith Troy, George Downer, Kenneth Durham,* and *Charles F. Riddell,* for appellant.

*Yantis & Brodie* and *Thomas L. O'Leary,* for respondent and cross-appellant.

*Hayden, Metzger & Blair, Leo Teats,* and *Ralph Teats, amici curiae.*

BEALS, J.—This proceeding was instituted by the prosecuting attorney of Thurston county, by way of an information in *quo warranto,* filed in the superior court. The action was tried upon an amended information which charged that the respondent herein, Lumbermen's Clinic, a corporation, had illegally and unlawfully entered into contracts with numerous employers of labor, whereby respondent bound itself to render to the employees of the contractees medical and first aid services of the nature referred to in Rem. Rev. Stat., § 7724 [P. C. § 3513], *infra,* the information charging that respondent had no right to make any such contracts, it not being a hospital association within the purview of the statute; that respondent, by the contracts, unlawfully engaged in the practice of medicine without any license so to do; that the incorporators of respondent are persons interested financially in the corporations with whom respondent has contracted to render services; and that the contracts are illegal, for the reason that respondent has unlawfully transferred

to certain doctors contracts providing for the rendition of medical aid.

The information further charges that, in its operations, respondent has violated the law, in that it has failed to properly apply funds collected from workmen, and has created out of such funds a reserve for which no service is rendered; that respondent's contracts are illegal for the further reason that respondent thereby carries on the business of insurance within the state of Washington without having first obtained a license so to do; and that the employees of the persons with whom respondent has contracted are not accorded proper representation in the administration of the contracts and in the control of the funds contributed by the workmen. The information demanded a judgment of ouster and an accounting of money received, together with the entry of an order impounding the funds in possession of the corporation, save such as are required for necessary services to injured workmen, general relief being also prayed for.

By its answer, respondent admitted its incorporation and the execution of the contracts referred to therein. All other allegations were denied, the answer affirmatively alleging:

"That its incorporators and shareholders are employing corporations doing business in Thurston and Mason counties, Washington. That the object and purpose of the corporation is to provide medical and hospital service for the employees of the shareholding companies without profit to the corporation or to the shareholders, and to act as a hospital association as contemplated by the provision in section 7724, Rem. Rev. Stat. of Washington.

" . . . That in prosecution of its business the corporation enters into contracts with employing companies to render medical, surgical and hospital service to the employees of the said contracting companies, the cost of said service being paid from a fund contributed

to by the employing companies and their employees. That the fund so produced is used solely for the payment of the cost of medical, surgical and hospital service and the administration of the affairs of the corporation except in so far as a reserve is created from time to time when the collections on monthly contributions are in excess of the cost of service rendered during the ·current period, which reserve is at all times reasonable and varies from month to month, being sharply reduced in periods when payrolls are small and charges are in excess of collection. That the maintenance of said reserve is necessary for the protection of all interested parties. That the charge for service rendered contracting companies and collected from their employees, is reduced from time to time when practicable to prevent the accumulation of any undue surplus.''

The affirmative allegations in the answer were denied by a reply.

Relator argues that the pleadings were, by the evidence received without objection, enlarged to include an allegation to the effect that respondent is a business corporation masquerading as a charitable institution, and that respondent should therefore be prohibited from further engaging in business.

The trial court found that respondent is not a hospital association, and that its state medical aid contracts were illegal. A final judgment was entered, restraining respondent from entering into any further state medical aid contracts until respondent had reorganized in such a manner as to bring itself within the provisions of the law, a period of ninety days being accorded within which to take such action. The trial court did not pass upon the validity of respondent's health and family contracts, hereinafter referred to. From this judgment, both parties have appealed, and will in this opinion be referred to as relator and .respondent.

Relator assigns error upon the refusal of the trial

court to restrain respondent from entering into any further contracts; in refusing to oust respondent from doing business within the state; in refusing to enter a decree providing for the dissolution of respondent corporation; in refusing to appoint a receiver for respondent; and in granting respondent ninety days within which to reorganize. Relator also contends that the trial court erred in refusing to find that respondent was illegally engaged in the practice of medicine and in the business of insurance; in refusing to restrain respondent from entering into certain non-incidental health contracts for the furnishing of medical, surgical and dental services and hospitalization to groups of individuals, and from entering into its so-called family contracts. It is also contended that the trial court erred in refusing to find that respondent is a business and not a charitable corporation, and in excluding evidence concerning profits which relator contends have accrued to its shareholders.

Respondent contends that the trial court erred in holding that respondent is not a hospital association, within the statutory definition; in requiring respondent to reorganize; and in prohibiting respondent from entering into certain contracts pending reorganization.

Lieu contracts for medical aid are provided for by Rem. Rev. Stat., § 7724 [P. C. § 3513], the pertinent portion of which reads as follows:

"Any contract made in violation of this act shall be invalid, except that any employer engaged in extra-hazardous work may, with the consent of a majority of his workmen, enter into written contracts with physicians, surgeons and owners of hospitals operating the same, or with hospital associations, for medical, surgical and hospital care to workmen injured in such employment, by, and under the control and administration of, and at the direct expense of the employer and his workmen. Such a contract shall not be assignable or transferable by operation of law or otherwise except

with the consent of the supervisor of industrial insurance endorsed thereon. Before any such contract shall go into effect it shall be submitted to the supervisor of industrial insurance, and may be disapproved by the supervisor of industrial insurance when found not to provide for such care of injured workmen as is contemplated by the provisions of section 7715, and if a contract so submitted be with the owners of a hospital operating the same, or with a hospital association, the supervisor of industrial insurance shall have power to disapprove the same if in his judgment the ownership or management of such hospital or hospital association shall not be such as to produce satisfactory service. Any such contract with physician, surgeon, or owner and operator of a hospital, or with a hospital association, so disapproved shall not be valid. Otherwise it shall be approved, and take and continue in effect for any period of time specified therein, not exceeding three years from the date of such approval . . . Every such contract to be valid must provide that the expenses incident to it shall be borne one-half by the employer and one-half by such employees, and that it shall be administered by the two interests jointly and equally. . . . the employer shall pay monthly into the medical aid fund ten per centum of the amount he would have been required to pay in that month if such contract had not been made, and of that ten per centum he shall collect one-half from his said workmen by proper deduction from the daily wage of each, and in addition thereto, each such employer shall, when required by the director of labor and industries through, and by means of, the division of industrial insurance, pay into the surplus fund, hereby created, a sum not exceeding one per cent of the amount he would have been required to pay into the medical aid fund, had such contract not been made, and the employer shall collect such one per cent from the party agreeing to furnish such medical aid and hospital service. . . ."

The phrase "hospital association" is not defined in the act.

It is also provided in the section that the supervisor or any interested person may complain of the service

rendered under the contract, and that the same may be revoked if the complaint be justified.

Respondent was organized July 8, 1925, the incorporators (eight in number) stating in the preamble that they desired to form a corporation

" . . . in conformity with the laws of the state of Washington relative to corporations and associations formed for religious, social and for charitable purposes."

The articles state that the object of the corporation is

" . . . to provide medical and surgical attention for employees of members of this corporation or employees of the companies represented by members of this corporation and to do all acts or things necessary, proper, incidental or convenient to said purpose and not inconsistent with the laws of the state of Washington, both within and without the state of Washington, and to that end to own, hold and use property, both real and personal, to levy and collect assessments from the membership of the company sufficient to defray the expenses of conducting its business and to charge and collect such reasonable fees from persons receiving benefits from the corporation as shall be necessary for the carrying on of its business, said business to be carried on, however, without any purpose of producing profits for the corporation or its members."

April 30, 1931, the articles of incorporation were amended by making the article stating the object of the corporation to read as follows:

"The objects for which this corporation is formed are to provide medical and surgical attention for employees of members of this corporation or other persons or companies employing labor and desiring such service," etc.

The articles provide for a board of five trustees to manage the affairs of the corporation, and that

"Membership in the corporation shall be confined to employers as defined in the industrial insurance act of

the state of Washington or to persons associated with employers assisting in the administration of the industrial insurance act of the state of Washington, and to such employers as operate at or in the vicinity of Olympia, Washington, and whose applications for membership are accepted by the trustees of the company.''

It clearly appears from the record that the corporation never attempted to perform any religious functions, that it had no religious purpose, and that it never engaged in social activities of any sort or description. Neither does it appear that it ever performed or rendered any charitable service. The corporation had no capital stock, and no contribution of any capital fund was made by any person, nor has any money ever come into the fund save pursuant to the activities hereinafter referred to.

Immediately upon its formation, the corporation proceeded to enter into medical aid contracts with corporations with which one or more of the incorporators of respondent were interested. Respondent also entered into so-called non-incidental contracts with employees of corporations with which the incorporators were represented, these contracts providing for care during sickness and injury not received in the course of extrahazardous employment. These non-incidental contracts were paid for by the workman at the rate of twenty-five cents a day for the first four days of the month during which he was employed. The funds received from the two classes of contracts were intermingled, no segregation thereof being attempted. The only persons receiving aid under these contracts were those who were paid up thereunder.

Section 7724 [P. C. § 3513], *supra,* by its terms contemplates the organization of ''hospital associations'' for the purpose of contracting with employers for the rendition of medical aid service to workmen. Used in contradistinction to ''owners of hospitals op-

erating the same," it would seem that, by "hospital associations," the legislature intended to characterize one furnishing hospitalization in hospitals owned by others. It is reasonable to suppose that the term would include both one operating a hospital owned by another and one who contracts with hospitals for the rendition of service to designated persons.

■ The executive construction placed by the department of labor upon such contracts should be considered in determining that the statute does not limit such contracts to persons actually operating hospitals as owner or lessee. The act provides for the filing of a bond, if required by the head of the department of labor. Nothing is found in the statute which indicates that the services rendered pursuant to the contracts referred to shall be rendered for any less than their market value, or that the persons contracting to furnish any such service shall be engaged in religious, social or charitable work of any sort.

■ We are clearly of the opinion that the object for which respondent corporation was formed, as expressed in its articles of incorporation, is utterly at variance with the preamble of the articles above quoted, and that, notwithstanding the fact that the articles state that the business of the corporation shall be carried on without any purpose of producing profits, the corporation was attempted to be organized under a statute which does not contemplate the organization of any such business.

■ Providing, for compensation, medical and surgical care for those in need of the same, is as much a business as the operation of a lumber mill or a grocery store, and any business may be conducted without any purpose of producing profits, if the owner desires to operate it on that principle.

Respondent argues that, as its contracts were for

several years approved by the department of labor, weight should be given to some supposed executive construction of the law applicable to the formation of a hospital association. We find no reason for applying the doctrine which respondent invokes in connection with this phase of the case.

It appears that, after some of the medical aid contracts were entered into, the state raised its medical aid charges. Respondent did not raise its rates for that service, and it appears that, at the time of the institution of this proceeding, the employers who were dealing with respondent were paying to respondent less than they would have been required to pay the state for the same service. Respondent has at no time transacted any business other than operating under medical aid and health contracts.

Respondent in its answer affirmatively pleaded that its incorporators and shareholders are employing corporations, doing business in the state of Washington, and that the object and purpose of the corporation is to provide medical and hospital service for the employees of the shareholding companies, without profit to the corporation or to the shareholders. Respondent also alleged that its income is used solely for the payment of the cost of the service rendered, together with administrative expense, and for the creation of a reserve, and that such a reserve is necessary for the protection of all interested parties. The affirmative allegations in the answer having been denied by a reply, the issue as to the question of resulting profit to the corporation or to its shareholders or members was directly tendered.

Profit does not necessarily mean a direct return by way of dividends, interest, capital account or salaries. A saving of expense which would otherwise necessarily be incurred is also a profit to the person benefited. If

respondent renders to its incorporators or members, or to businesses in which they are interested and in whose profits they share, a service at a cost lower than that which would otherwise be paid for such service, then respondent's operations result in a profit to its members.

The trial court ruled that relator would be permitted to introduce evidence tending to prove that respondent itself as a corporation made a profit out of its operations, but refused to permit the introduction of evidence tending to prove that respondent's operations resulted in a profit to its members by furnishing a service which, if furnished by the state, would cost more money. In this ruling, the trial court erred, as in considering, in the light of the situation here presented, the question of whether or not respondent is or is not operated for profit, money saved is money earned. The employers were obligated to pay for medical aid, for which the state made a certain charge. The setting up by a group of employers of a corporation for the purpose of furnishing this medical aid at a less cost than that charged by the state certainly results in a profit to the members of the corporation who contract with it for the rendition of the medical aid service. Of course, the saving to the employers paying for the medical aid accrues in an equal amount to the workmen, but this makes it none the less a profitable operation to the employers benefited.

Respondent contracted with the workmen for nonincidental service, paid for only by the men. Relator contends that, by charging for this service more than it was worth and considerably more than it cost, respondent further reduced the expense of the medical aid to the employers with whom it contracted. This may or may not be the case. Apparently, no segregation of the funds was kept by respondent, and the trial

court refused to allow the introduction of evidence along this line.

Respondent admitted that it had solicited business, and that it furnished its services only upon payment of a reasonable compensation. It has entered into agreements with the police and fire departments of the city of Olympia, whereby it agrees to furnish service beyond that furnished by the state under the workmen's compensation act. In organizing a corporation, it is only reasonable to suppose that the incorporators desire either to further some religious, social or charitable purpose, or to gain some direct or indirect material advantage. It is, of course, true that the two motives may to some extent blend in the same plan.

In the case at bar, we find no trace of any religious, social or charitable activity carried on by respondent. The promoter of the scheme, of course, attains a desirable objective in the receipt of a satisfactory salary for managing the business; but as to the other incorporators, the conclusion is irresistible that they were motivated by the idea that they or the corporations in which they were interested would receive some advantage from the operation of the business of the corporation. It is not necessary to impute to the incorporators any unworthy motive, but at the same time, it strains the imagination to believe that they were induced by pure altruism to organize the corporation.

We are clearly of the opinion that respondent is not engaged in carrying out any purpose or activity within the preamble of its own articles of incorporation, or within the statute pursuant to which respondent corporation was sought to be organized.

In the case of *Southerland v. Decimo Club,* 16 Del. Ch. 183, 142 Atl. 786, the court of chancery of Delaware, in an action by the attorney general to forfeit

the corporate charter upon the ground of abuse and misuse of corporate powers, privileges and franchises, said:

"If its business activities were such as to warrant the view that the corporation was in fact one for profit, the circumstance that its activities were carried on indirectly rather than directly cannot help the situation, for indirection finds no more favor in equity than does direction. . . . While profit has its origin ordinarily from business activities, yet it does not follow that a membership corporation which engages in business is necessarily a corporation for profit within the meaning of the act. If the facts and circumstances show the business to be such in character and volume as to indicate that the engaging in business and the making of profits therefrom for the benefit of its members is the principal or one of the principal objects of the corporation, rather than a thing which is subordinate and merely incidental to the principal object of its existence, it is reasonable to conclude that the corporation cannot be called one which is organized 'not for profit.' "

Our conclusion is also supported by the following authorities: *Hartnett v. Plumbers' Supply Ass'n,* 169 Mass. 229, 47 N. E. 1002, 38 L. R. A. 194; *Oregon R. & N. Co. v. Oregonian R. Co.,* 130 U. S. 1, 9 S. Ct. 409; *National Ass'n of C. P. A. v. United States,* 292 Fed. 668; *Bailey v. Master Plumbers,* 103 Tenn. 99, 52 S. W. 853, 46 L. R. A. 561.

■ Under these circumstances, *quo warranto* will lie to question respondent's operations. *People ex rel. Attorney General v. Michigan Sanitarium & Benevolent Ass'n,* 151 Mich. 452, 115 N. W. 423; *Society of St. Stephen the Martyr v. Sikorski,* 141 Ill. App. 1; *Commonwealth v. U. S. Annuity Society,* 303 Pa. 19, 154 Atl. 24; *People ex rel. Bar Ass'n v. California Protective Corp.,* 76 Cal. App. 354, 244 Pac. 1089.

■ Respondent complains of the decision of the trial court holding that it is not a hospital association

within the meaning of the statute, for the reason that no definition of hospital association is offered and no standard set up. The statute does not define the phrase, and we find it unnecessary here to undertake to lay down any precise definition. The trial court was clearly correct in holding that respondent is not such a hospital association as meets the requirements of § 7724 [P. C. § 3513], *supra,* it appearing that respondent was incorporated under an act, the provisions of which do not contemplate hospital associations, unless in connection with religious, social and charitable purposes; it also appearing that respondent's operations had been so conducted as to result in profit to its incorporators or shareholders, both in the matter of cost of medical aid and in the setting up of a large reserve fund. Respondent, therefore, has been operating beyond the scope of the statute under which it was formed, and exercising franchises or privileges not conferred by law.

The judgment appealed from need not be reversed because of error in rejecting evidence offered by relator concerning profits accruing to the members of respondent corporation by reason of its operations, as the record clearly shows, as above stated, that respondent was organized under a statute which, in fact, conferred no authority for the organization of such a corporation, and that respondent's operations have also been without the scope of the statute.

Relator complains of the privilege accorded respondent to reorganize within ninety days from the date of the judgment, contending that a judgment of ouster should have been entered and a receiver appointed to liquidate respondent's business. We find no evidence of bad faith in connection with respondent's operations, and in carrying on its business it apparently has so conducted itself as to meet the ap-

proval of the department. In 5 Fletcher's Cyclopedia of the Law of Private Corporations, p. 884, § 2362, the rule is laid down as follows:

"It is within the power of the court to postpone or suspend the operation of the judgment in quo warranto. This it will do to prevent undue hardship which might result to the judgment defendant from its immediate enforcement. Thus a judgment ousting the corporation from the continuance of a particular right, privilege or franchise may be stayed in its operation and held in abeyance for a certain length of time indicated therein, after which it will become effective, and a writ of ouster against corporations found guilty of violating antitrust statutes may be stayed and suspended, on condition that the corporation obey the laws, the court still retaining jurisdiction of the matter."

Under this doctrine, the trial court properly accorded respondent a reasonable time within which to arrange, if possible and desirable, for the carrying on of its business by some lawful agency. Relator argues that no such agency can be provided, but that is a question which cannot be determined in advance.

Several other important questions are extensively argued in the briefs. Relator contends that respondent has been unlawfully engaged in the practice of medicine, and that it has violated the insurance code. If respondent's business is to be taken over by any other agency, the other questions argued on this appeal may not again arise, or if they do arise, may appear in a different form. We cannot undertake to decide such questions in advance, but must await the presentation of some concrete situation which calls for decision upon a specific question.

The judgment now before us for review merely allows respondent ninety days

". . . within which to effect a reorganization to constitute itself a hospital association within the requirements of § 7724, Rem. Rev. Stat."

Under this judgment, it might be contended that respondent would have no right to turn its business over to a new corporation or association of some sort which respondent might contend was authorized under the law to carry on its business. Respondent should have the privilege either to "reorganize" or to turn its business and assets over to some qualified person, if such be available and such action be deemed desirable.

The judgment should also include a provision to the effect that, if at the end of the limitation fixed therein respondent has taken no steps to avail itself of the privilege accorded, the court will proceed to enter a judgment of ouster and liquidate respondent's business.

The judgment appealed from will be modified in accordance with the views herein expressed. The new judgment to be entered will allow ninety days from the date thereof within which respondent may proceed as therein directed. No costs in this court will be allowed to either party.

TOLMAN, MITCHELL, HOLCOMB, MAIN, STEINERT, and GERAGHTY, JJ., concur.

BLAKE, J. (dissenting)—It is clear from the lower court's judgment and the majority opinion that respondent is not a hospital association, in contemplation of Rem. Rev. Stat., § 7724 [P. C. § 3513]. That statute simply permits "*any employer* . . ., with the consent of a majority of his workmen," to

" . . . enter into written contracts with physicians, surgeons and owners of hospitals operating the same, or with hospital associations, for medical, surgical and hospital care to workmen injured in such employment, . . ."

The obvious purpose of the statute is, under the conditions prescribed, to relieve the employer and work-

men from contributing to the medical aid fund, as required by Rem. Rev. Stat., § 7713 [P. C. § 3502]. It is equally clear that § 7724 [P. C. § 3513] contemplates that such contracts shall be made with operators of hospitals—persons or corporations engaged in the business of hospitalization and treatment of patients brought in for medical and surgical care. The respondent operates no such hospital. To my mind, it is a perversion of the statute (§ 7724 [P. C. § 3513]) to permit a group of employers to band together for the sole purpose of "farming out" their injured employees to such surgeons and hospitals as they may choose.

But what is more important, respondent has been conducting a health and accident insurance business without complying with the insurance code (Rem. Rev. Stat., §§ 7032-7298 [P. C. §§ 2908-3119-6]). Section 7088 [P. C. § 2951] provides:

"It shall be unlawful for any company, corporation or association to transact the business of insurance in this state, except as provided in section 7120 unless the company, corporation, or association, shall have complied with all the provisions of this act, and shall have obtained a certificate of authority from the commissioner. . . ."

Section 7032 [P. C. § 2908] defines *insurance* in the following language:

"Insurance is a contract whereby one party called the 'insurer,' for a consideration, undertakes to pay money or its equivalent, or to do an act valuable to another party called the 'insured,' or to his 'beneficiary,' upon the happening of the hazard or peril insured against, whereby the party insured or his beneficiary suffers loss or injury."

The contracts undertaken by respondent contain every element of insurance contracts, as defined by the statute and as construed by the decisions of this court.

Construing the statute in *State ex rel. Fishback v. Universal Service Agency,* 87 Wash. 413, 151 Pac. 768, Ann. Cas. 1916C, 1017, the court said:

"The essential elements of an insurance contract, it will be observed from the definition given, are (1) an insurer, (2) a consideration, (3) a person insured or his beneficiary, (4) a hazard or peril insured against whereby the insured or his beneficiary may suffer loss or injury."

Since respondent has been wholly engaged in activities in which, under the law, it had no right or authority to engage, the writ of *quo warranto* should issue.

MILLARD, C. J. (dissenting)—I agree with Blake, J., that respondent is not a hospital association in contemplation of the statute (Rem. Rev. Stat., § 7724 [P. C. § 3513]) and that respondent is violating the insurance code (Rem. Rev. Stat., §§ 7032-7298 [P. C. §§ 2908-3119-6]). I am of the view that the writ of *quo warranto* should issue.