BONNAR-VAWTER, INC.
*vs.*
ERNEST H. JOHNSON, STATE TAX ASSESSOR

Kennebec.    Opinion, July 25, 1961.

*Samuel W. Collins, Jr.,*
*Boyd L. Bailey,* for plaintiff.

*Ralph Farris, Sr.,*
*Richard A. Foley,*
*John W. Benoit,* for state.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, DUBORD, SIDDALL, JJ.

SIDDALL, J. On Report. This is an appeal by complaint from an assessment by the State Tax Assessor, hereafter called the appellee, against Bonnar-Vawter, Inc., hereafter called the appellant, of a use tax, interest, and penalty arising out of the use within the State of Maine of certain printing plates. The case is reported from the Superior Court for decision upon the complaint, answers, and agreed statement of facts. The total tax assessment, including interest and penalty, amounts to $5,253.33.

The stipulations disclose that the appellant is a Delaware corporation having offices in Rockland, Maine, and Keene, New Hampshire. It is engaged in the business of printing in Rockland. In its plant are rotary presses, which consist of rotating drums on which type is mounted. The printing plates, for the use of which a tax has been assessed, constitute the type. These plates are sheets of rubber type with brass fillings designed to mount them to rotary presses. The metal backing is curved and fitted for the appellant's presses. Opposite the drum is a steel impression cylinder. Paper is fed, in a continuous strip, between the rotating drum and the impression cylinder, permitting a continuous repeated imprint upon the paper by the type mounted on the drum. The plates are manufactured in New Hampshire by Photoplate, Incorporated, hereafter called Photoplate, a wholly-owned subsidiary of the appellant. The President, Board of Directors and other officers are the same in the two companies. The two corporations maintain separate

books of account and separate corporate balance statements, and also file separate Federal Income Tax returns. The employees engaged in the manufacture of the plates are employed by Photoplate.

When the appellant receives a printing order, it orders the necessary plates from Photoplate. Photoplate then orders from various supply houses the raw materials, i.e., rubber and brass, to make the plates. The raw materials are shipped by the supplier consigned to Photoplate. No agency agreement exists between the appellant and Photoplate in respect to the order for raw materials, and they are not purchased by Photoplate as the disclosed agent of the appellant. When received, these materials are carried as items of inventory on the books of Photoplate. The invoice when received is approved and forwarded by Photoplate to the appellant who enters an "account payable—Trade" on its books and makes payment to the vendor, and then enters an "account receivable—Photoplate" on its books. Photoplate enters an "account payable—Bonnar-Vawter" on its books. The raw materials are then fabricated by Photoplate into printing plates. The appellant pays the employees of Photoplate, and the labor charge is entered on Photoplate's books as an "account payable—Bonnar Vawter" and the labor charge is entered on the appellant's books as an "account receivable—Photoplate." The completed plates are shipped to the appellant in Rockland upon completion. Photoplate bills the appellant monthly for the plates so shipped. The monthly invoice shows the total amount of the charges for the particular month covered by the invoice, and contains the words "Sold to Bonnar Vawter, Incorporated, 93 Dunbar Street, Keene, New Hampshire." The invoice figure is not determined in advance, and varies as expenses and overhead vary. During a portion of the taxable period the monthly charge for the plates was determined by adding 300% to 500% of the labor costs to the actual cost of labor. It was stipulated

that the 300% to 500% of labor costs was to cover materials, overhead, depreciation, taxes, etc. During the remainder of the taxable period 25% of labor and material costs were added to the actual costs of labor and material. The 25% of labor and material costs was charged to cover overhead, depreciation, taxes, etc. The price formula was set up in such a manner as to permit Photoplate to break even and not make a profit on the transaction.

When the printed plates are received by the appellant, the entry of "account receivable—Photoplate" is cancelled on the appellant's books, and the entry of "account payable—Bonnar Vawter" is cancelled on the books of Photoplate.

After the plates have been used to make up the customer's order, they are detached from the press and returned to New Hampshire for storage against a possible re-order by the same customer. About 34% of the plates are never used again. About 30% are used with some slight alteration. About 30% are used with major alterations and about 5% are used again with no alteration.

One of the contentions of the appellant is that the transactions between it and Photoplate, as disclosed by the specifications, did not constitute taxable sales, because the plates were not sold to the appellant in the ordinary course of the seller's business within the meaning of the tax statute. As bearing on its contention the appellant argues (1) that Photoplate was not maintained with any object of gain, benefit, or advantage, either direct or indirect; (2) that Photoplate did not have the general property in the plates, and that the transfer of the plates was in the nature of the termination of a bailment; (3) that the purchase of the plates was the purchase of services and not of tangible personal property; (4) that the nature of the transactions between the two companies was such that Photoplate was operated as a department of the appellant.

The pertinent statutory provisions applicable to appellant's contentions are as follows:

> "**Use Tax.**—A tax is imposed on the storage, use or other consumption in this state of tangible personal property, purchased at retail sale . . . at the rate of 3% of the sale price." R. S., 1954, Chap. 17, Sec. 4, as amended.

> " 'Retail sale' or 'sale at retail' means any sale of tangible personal property, in the ordinary course of business, for consumption or use, or for any purpose other than for resale, except resale as a casual sale, in the form of tangible personal property, . . . . " R. S., 1954, Chap. 17, Sec. 2 as amended.

> " 'Business' includes any activity engaged in by any person or caused to be engaged in by him with the object of gain, benefit or advantage, either direct or indirect." R. S., 1954, Chap. 17, Sec. 2.

> " 'Use' includes the exercise in this state of any right or power over tangible personal property incident to its ownership when purchased by the user at retail sale." R. S., 1954, Chap. 17, Sec. 2.

We now discuss appellant's claim that Photoplate was not engaged in an activity with the object of gain, benefit, or advantage, either direct or indirect.

It will be noted that the statute does not use the word "profit." The statute used the words "gain, benefit, or advantage, either direct or indirect." These words have a broader meaning than that of the word "profit." One may engage in a business activity with an object of "gain, benefit, or advantage" and not necessarily for profit. *State* v. *Zellner,* 133 Ohio St. 263, 13 N. E. (2nd) 235, 238; *Union League Club* v. *Johnson,* 115 P. (2nd) 425, 426.

The appellant cites the case of *Valier Coal Company, Applt.* v. *Department of Revenue,* 11 Ill. (2nd) 402, 143 N. E. (2nd) 35, 64 A. L. R. (2nd) 763. In that case an at-

tempt was made to assess a retailer's occupation tax against a wholly owned subsidiary of the Chicago, Burlington and Quincy Railroad Company. By an order of the Illinois Public Utilities Commission the subsidiary was prohibited from selling its product to the general public, and could sell to the parent company only at a price not exceeding the actual cost of production, plus an amount sufficient to pay interest on the investment and to provide a sinking fund. The court held that the subsidiary was in effect forbidden to engage in business, and that the *right* to sell to the general trade and to make a profit or realize a gain are ordinary incidents of being engaged in retail business, although the imposition of a tax does not depend upon whether a profit is actually realized. In the instant case Photoplate was not prohibited from making a profit or gain, or from selling to the general public. The failure to realize a profit from its transactions, or to deal with the general public, was not by prohibition but by choice.

The gain, benefit or advantage may be large or small, direct or indirect. Although no profit was made by Photoplate from its transactions with the appellant, it is not difficult to discover a direct or indirect gain, benefit, or advantage therefrom to Photoplate. The charges made by Photoplate were made to cover, in addition to the cost of labor and materials, "overhead, depreciation, taxes, etc." We must assume from the nature of the plates that Photoplate was the owner of equipment necessary in their production. This equipment was subject to depreciation. There was necessarily some overhead in the maintenance of the corporation. Apparently there was a tax liability of some sort. The charges made to the appellant, and paid for by it, provided revenue to Photoplate sufficient to cover its overhead, taxes, and depreciation, and thereby, to that extent at least, Photoplate benefited from its transactions with the appellant. We must conclude that Photoplate was engaged in an activity with the object of gain, benefit, or ad-

vantage, within the meaning of the word "business" as defined in the statute.

The appellant claims that the property interest of Photoplate in the plates was not substantial enough so that the transfer to the appellant constituted a "sale," and that the transfer of the plates was in the nature of a bailment. We cannot accede to this view. The materials used in the manufacture of the plates were bought by and consigned to Photoplate by the supplier. We find no facts from which it can be reasonably inferred that the general title to the plates, during the fabricating and manufacturing process, was in any other person than Photoplate. The only reasonable conclusion to be drawn from the facts in this case is that full title to the plates continued in Photoplate at all times during their manufacture and until it parted with possession of them to the appellant. The facts are all consistent with the relationship of vendor and vendee between Photoplate and the appellant, and inconsistent with any other relationship.

Another claim made by the appellant is that in purchasing the plates it bought services and not personal property. The cost of the materials used in the manufacture of the plates was approximately 15% of the total amount charged as set forth in the invoices. The balance of the invoice price was made up of labor, overhead, depreciation, taxes, etc. The language of sales and use tax legislation varies in different states. Decisions by other courts are consequently of little assistance, unless the specific language of the statute involved is clearly set forth. The appellant cites, among other cases, the case of *Washington Times-Herald, Inc.* v. *District of Columbia,* 213 F. (2nd) 23. In that case a newspaper purchased certain comic strip mats manufactured by the seller from original drawings. The mats were of inconsequential value. We note that the District of Columbia Use Tax Act exempted from sales and use

taxes, "professional or personal service transactions which involve sales as inconsequential elements for which no separate charges are made." By regulation a sale was an "inconsequential element" where the price of the tangible personal property was less than 10% of the amount charged for the services. The transaction was held to be a sale of professional and personal services and a transfer of mats of inconsequential value, and consequently was not subject to tax. We do not consider that the manufacture of the plates in the instant case involved the type of service furnished in the above cited case. Furthermore, we find no comparable provision in our statutes relating to personal service transactions. In the case before us the complete fabricated and manufactured plates were shipped to the appellant from outside the state and were used in this state by the appellant. The purchase price reflected the cost of labor, materials, overhead, depreciation, and taxes. We are unable to discover any provision in our statutes that would render the use of the plates in this state non-taxable on the ground that the transaction constituted a sale and purchase of services and not of tangible personal property.

The appellant, in arguing that the goods were not sold to it in the ordinary course of business, asks us to disregard the legal entity of Photoplate and consider that in its transactions with the appellant it was operating as a department of the parent company.

Generally, courts have been reluctant to disregard the legal entity of a corporation, and have done so with caution and only when necessary in the interest of justice. The corporate entity will be disregarded when used to cover fraud or illegality, or to justify a wrong. It will not be disregarded when to do so would promote an injustice, give an unfair advantage, or contravene public policy.

"The doctrine of corporate entity is one of substance and validity; it should be ignored with cau-

tion, and only when the circumstances clearly justify it. The theory of the alter ego has been adopted by the courts to prevent injustice, in those cases where the fiction of a corporate entity has been used as a subterfuge to defeat public convenience or to perpetuate a wrong; it should never be invoked to work an injustice, or to give an unfair advantage." *Pickwick Corporation* v. *Welch,* 21 F. Supp. 664, 669.

For a discussion of the same principle see 13 Am. Jur. Corporations, Sec. 7; 18 C. J. S. Corporations, Sec. 6; Fletcher Cyclopedia Corporations, Sec. 41.

In the field of retal sales tax legislation and similar tax legislation, courts have generally refused, for various reasons, to separate the corporate entities of the parent company and the wholly owned subsidiary in order to grant relief from such taxes at the expense of the state. See *Superior Coal Co.* v. *Department of Finance,* 377 Ill. 282, 36 N. E. (2nd) 354. *Superior Coal Co.* v. *Department of Revenue,* 4 Ill. (2nd) 459, 123 N. E. (2nd) 713; *Northwestern Pac. R. Co.* v. *State Board of Equalization,* 21 Cal. (2nd) 524, 133 P. (2nd) 400; *Re Bush Terminal Co.,* 93 F. (2nd) 661; *Rexall Drug Co.* v. *Peterson,* 113 Cal. App. (2nd) 528; 248 P. (2nd) 433; *Simmons Hardware Co.* v. *City of St. Louis,* 192 S. W. 394, (Mo.) ; 64 A. L. R. (2nd) 769 (Annotation).

In the instant case, the appellant did not cause the plates to be manufactured by its own company. It elected to organize a subsidiary company to manufacture the plates. The reason for so doing was not disclosed by the stipulations. We must assume, however, that some economic advantage resulted therefrom. A corporation ought not to be able to take whatever advantages are gained by maintaining a subsidiary as a separate entity, and at the same time cast aside that entity whenever it becomes a burden. We see no reason, under the circumstances of this case, for ap-

plying the rule that allows the corporate entity to be disregarded.

We have determined that Photoplate was engaged in an activity with the object of gain, benefit, or advantage and that it had the general property in the plates. We have also found that the purchase of the plates was the purchase of tangible personal property and not services, and have refused to disregard the corporate entities of the two corporations. In the instant case there were two distinct corporations. Separate books were kept by the corporations. The usual formalities of purchase and sale were observed. The form of invoice used was similar to that generally used in purchase and sale transactions. The transactions between the appellant and Photoplate bore all of the earmarks of a sale by the subsidiary to the parent company. We therefore conclude that the plates were purchased at retail sale in the ordinary course of business of the seller, and their use in this state by the buyer, under the circumstances set forth in the stipulations, was taxable under the provisions of R. S., 1954, Chap. 17, Sec. 4, as amended, unless we find merit in appellant's contention that the property was consumed or destroyed in the manufacturing process within the meaning of the statute.

A portion of R. S., 1954, Chap. 17, Sec. 2 provides:

" 'Retail sale' and 'sale at retail' do not include the sale of tangible personal property which becomes an ingredient or component part of, or which is *consumed or destroyed* or loses its identity in the manufacture of, tangible personal property for later sale by the purchaser but shall include fuel and electricity." (Emphasis supplied.)

*Oxford Paper Co.* v. *Johnson,* 155 Me. 380, 156 A. (2nd) 235 presents the following facts: Mercury was constantly maintained in the machinery for manufacturing paper. A reservoir of 35 tons of mercury was replenished continu-

ally, day by day, with additional mercury to replace that which had become dissipated. During each year, 7% by weight, or approximately 2½ tons, of all mercury thus utilized was lost in the manufacturing process. The court held that this percentage was continuously "consumed or destroyed" in the manufacture of tangible personal property and that the transaction in purchasing the mercury was not taxable. In *Hudson Pulp and Paper Corp.* v. *Johnson*, 147 Me. 444, 448, 88 A. (2nd) 154, our court, after discussing the application of the words "ingredient or component part," had this to say:

> "The words 'consumed or destroyed,' however, are each applicable not only to that which is being acted upon, the subject matter of manufacture, but also to those things which act upon the subject matter, viz., that which is being produced by manufacture. They are applicable to all of those expendibles by which the process of manufacture is carried on."

In that case certain lubricating oils and greases were used to lubricate machinery, and certain wires and felts were used upon paper machines. The court held that the oils and greases were destroyed in their use for their intended purposes, and that the wires and felt were rendered useless in the paper-making business after relatively short periods of time. All of these items were held to be nontaxable. In *Androscoggin Foundry Co.* v. *Johnson*, 147 Me. 452, 88 A. (2nd) 158, moulding sand, refractories, fire clay, steel shot and grit, crucibles and snagging whirls, all having a relatively short life in the foundry business were held not subject to a use tax. The factual situation in the instant case is different. In this case, if the value of the plates was impaired as a result of their use, it was not on account of any physical damage resulting therefrom, but because their future use depended upon further orders for printing the same copy. The plates were actually stored

awaiting such orders, and many, without alterations, or with either slight or major alterations, were used in the process of printing those orders. The facts in the instant case present a novel question. We are not aided by decisions in other states having a comparable tax statute. A study of the pertinent provisions of our sales and use tax legislation leads us to the conclusion that the legislative intent in the use of the words "consumed and destroyed," was to give relief from the payment of a use tax in those cases only where the personal property is *physically* consumed or destroyed in the manufacturing process to such an extent that it is rendered unfit for further practical use for its intended purpose. This case does not present such a situation.

The appellant claims that the penalty was wrongfully assessed. It concedes, however, that if we find that its use of the plates was taxable, we are not permitted, under the stipulations as drawn, to consider this claim.

We find that the use of the plates was taxable, and the entry will be

> *Appeal to Superior Court denied.*
> *Case remanded to Superior Court*
> *for decree denying appeal.*