USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT ____________________ No. 93-1993 EUGENE DESJARDINS, Plaintiff, Appellant, v. VAN BUREN COMMUNITY HOSPITAL, Defendant, Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MAINE [Hon. Morton A. Brody, U.S. District Judge] ___________________ ____________________ Before Breyer,* Chief Judge, ___________ Torruella and Boudin, Circuit Judges. ______________ ____________________ Paul F. Macri with whom Berman & Simmons, P.A. was on brief for _____________ _______________________ appellant. June A. Jackson with whom Paul W. Chaiken and Rudman & Winchell ________________ ________________ _________________ were on brief for appellee. ____________________ October 12, 1994 ____________________ ____________________ *Chief Judge Stephen Breyer heard oral argument in this matter, but did not participate in the drafting or the issuance of the panel's opinion. The remaining two panelists therefore issue this opinion pursuant to 28 U.S.C. 46(d). BOUDIN, Circuit Judge. In 1989, Eugene Desjardins ______________ brought suit against Van Buren Community Hospital, Inc. ("the Hospital"), a Maine Corporation, for federal and state claims arising from Desjardins' discharge from the Hospital in 1988. After trial, the jury found that the Hospital was liable under Federal Rehabilitation Act of 1973, 29 U.S.C. 794 et __ seq., two Maine statutes, and a pair of common-law counts ____ under Maine law. Desjardins was awarded almost $18,000 in damages, $5,000 in "front pay," and substantial attorney's fees. The Hospital appealed to this court but during the course of the appeal, the Hospital ceased operation for financial reasons. Further, the Van Buren Hospital District ("the District"), a municipal entity authorized by Maine statute to provide medical services in the Town of Van Buren, Maine, filed for bankruptcy. The District, technically a separate legal entity with taxation powers, owned the land, building and equipment used by the Hospital. In the bankruptcy pleadings, the District styled itself as "Van Buren Hospital District, d/b/a Van Buren Community Hospital." The District's chapter 11 petition was eventually dismissed by the bankruptcy court on the ground that the District was a government entity not entitled to chapter 11 protection. However, before the dismissal, the Hospital -2- -2- secured a temporary stay of its own appeal in the Desjardins case on the ground that the Hospital had filed for bankruptcy; in fact, it was the District that had so filed for bankruptcy. Ultimately, the stay was lifted and in July 1992, this court upheld judgment in favor of Desjardins. Since the Hospital took the position that it was virtually without assets, Desjardins requested a disclosure hearing before the magistrate judge. The hearing was held in December 1992. After hearing testimony, the magistrate judge assigned the Hospital's checking-account balance and its accounts receivable to Desjardins, but the magistrate judge refused Desjardins' request to hold the District legally responsible for the Hospital's debt to Desjardins. The district court upheld the magistrate judge and also declined to approve further discovery. Desjardins now appeals to this court. On appeal, Desjardins argues that several different doctrines allow him to hold the District liable for the debts of the Hospital. The magistrate judge rejected such an attempt on two grounds: that the District was not a party to the disclosure proceeding and, further, that in the original action the claims against the Hospital had not been separately asserted against the District, a distinct legal entity. These threshold objections are not without force but for various reasons we prefer to track the district court's -3- -3- disposition, which addresses the merits of Desjardins' attempts to impute liability to the District. Desjardins' first claim on appeal is that the doctrine of judicial estoppel prevented the District from denying that it and the Hospital were one and the same. Judicial estoppel may apply to bar a litigant from engaging in "intentional self-contradiction . . . as a means of obtaining unfair advantage . . . ." Patriot Cinemas, Inc. v. General Cinema ______________________ _______________ Corp., 834 F.2d 208, 212 (1st Cir. 1987) (quoting Scarano v. _____ _______ Central R. Co., 203 F.2d 510, 513 (3rd Cir. 1953)). Here, _______________ Desjardins says that the Hospital and District have been engaged in such self-contradiction in three respects: at the outset, the Hospital asserted a governmental immunity defense applicable only to the District; the District's petition for bankruptcy styled the District as "d/b/a Van Buren Community Hospital" and listed Desjardins as a creditor; and the Hospital requested and obtained a stay of its appeal from the Desjardins verdict during the District's bankruptcy proceedings. Since the district court rejected this judicial estoppel claim, the Hospital argues that the rejection should be affirmed because not clearly erroneous. Desjardins responds that judicial estoppel presents a matter of the law that should be reviewed de novo. In reality, judicial estoppel is __ ____ not extrinsically a matter of fact or law; the issues that -4- -4- arise may turn out to be ones of raw fact, abstract law, or something in between, e.g., the application of a general ____ standard to a known set of facts. Here, fine distinctions make no difference because we would affirm on the judicial estoppel issue even if every aspect of it were open to de __ novo review. ____ The phrases "self-contradiction" and "unfair advantage" used in Patriot Cinemas are not self-executing. There are _______________ many situations, especially at the outset of litigation, where a party is free to assert a position from which it later withdraws--or even to assert, in the alternative, two inconsistent positions of its potential claims or defenses. Of course, what is legitimate pleading in one context may be negligent or even fraudulent in another. Lawyers and judges are not beyond making the necessary distinctions. Here, the relationship between the Hospital and the District is surely one open to different interpretations and susceptible to argument. We do not see any wrongful self- contradiction, let alone unfair advantage, in the fact that the Hospital initially asserted a governmental immunity defense that was thereafter abandoned or that the District's bankruptcy petition used a d/b/a reference to the Hospital and mentioned Desjardins as a creditor, even though the District now presumably rejects both these implications. -5- -5- One could be more critical of the Hospital's request for a stay of its own appeal because of the District's bankruptcy. The request not only implied an identity of entities but it also led a court to take action, namely, the grant of a temporary stay. But again, there is no indication of deliberate dishonesty by the Hospital nor has the temporary stay been shown to have caused any serious prejudice to judicial proceedings or the position of the opposing party. Cf. Wang Laboratories, Inc. v. Applied ___ _________________________ _______ Computer Sciences, Inc., 958 F.2d 355, 358-59 (1st Cir. _________________________ 1992). We do not think this is a proper case for estoppel. Desjardins's next argument is that he should be allowed to "pierce the corporate veil" to reach the District's assets. Desjardins brought out that the District owned the land, building and equipment of the Hospital; that the five trustees of the District automatically became directors of the Hospital (although not the only ones); and--based on the testimony of one current trustee of the District--the Hospital was the "operating entity" and the meetings of the District trustees were only a "formality." "I guess I would have to say", said the testifying trustee, "that we kind of wear two hats." This testimony shows a considerable overlap between the two entities but hardly an identity so complete as to merge automatically what are formally two different legal -6- -6- organizations. That one entity holds property used by the other is hardly unique, and obviously one who is a trustee and a director wears "two hats." The reference to the trustees' meetings as a "formality" might be sinister in some contexts but here there is nothing surprising in the thought that an operating hospital should be the busy organization and that meetings of the titleholding District should be routine. "Formality" is not quite the same as "subterfuge." Equally important, Maine law requires something more than overlap for an adversary of one corporation to pierce the veil and reach another. Maine's highest court has said that its courts "pierce the corporate veil only if the corporate form is used fraudulently or illegally." LaBelle _______ v. Crepeau, 593 A.2d 653, 655 (Me. 1991). Maine courts may _______ also disregard separate corporate identities where separate treatment would "justify a wrong", Bonnar-Vawter, Inc. v. ___________________ Johnson, 173 A.2d 141 (Me. 1961), or would defeat legislative _______ policy or statutory aims. See Brennan v. Saco Construction, ___ _______ __________________ Inc., 381 A.2d 656, 662 (Me. 1978). But it is difficult to ____ see a "wrong" here, and no legislation is at issue. Desjardins is in substance seeking to impose liabilities of one entity on a closely related entity, the two of which have close connections, including a number of common directors, but is in other respects distinct. In Curtis v. ______ Lehigh Footwear, Inc., 516 A.2d 558 (Me. 1986), the former _____________________ -7- -7- employees of a bankrupt subsidiary company sued the parent corporation for severance pay. Even though the subsidiary parent shared several common directors, and corporate parents can usually determine the ultimate direction of their subsidiaries, the Maine court held that corporate entity would not be disregarded in the absence of bad faith. There is no showing of bad faith here. Finally, Desjardins protested the district court's treatment of possible further discovery. Desjardins reads a comment of the district judge as precluding Desjardins from engaging in any further discovery. The Hospital replies that a law permits the debtor to be summoned for a new disclosure hearing after six months, six months have passed since the last hearing, and Desjardins is now free to subpoena the Hospital again. The parties appear to agree that Desjardins can now summon and interrogate the Hospital again as to its assets. Even with the aid of the district court decision and three briefs, we are not able to tell what exactly remains of the dispute between the parties as to further discovery. Desjardins does say that he used the Maine procedures for the post-judgment investigation, as permitted by Fed R. Civ. P. 69, but might now like to use Federal Rule methods; the district judge did express some disagreement on this point. But instead of pursuing this issue, Desjardins' reply brief -8- -8- refers instead to the possibility of seeking discovery against nonparties, as well as attachment, trustee process or other liens. We think that we do not have an adequately framed issue before us on the discovery question. Desjardins' effort to impose liability on the District or obtain its assets or utilize its taxing authority has now been resolved. We think that further discovery addressed to this issue is barred on ____ the ground that the matter has already been adjudicated. As to Desjardins' use of any type of discovery for any other purpose, we make no pronouncements and will address such issues if and when presented by a specific controversy. Affirmed. ________ -9- -9-