STATE OF MAINE
CUMBERLAND, ss

BUSINESS AND CONSUMER COURT
Location: Portland
Docket No.: BCD-CV-14-46

RICHARD A. STEWART, JR., et al.,

    Plaintiffs/Counterclaim Defendants,

v.

BWT ENTERPRISES, LLC, et al.

    Defendants/Counterclaim Plaintiffs.

**ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

## I.    INTRODUCTION

Before the Court is Defendants' Motions for Summary Judgment pursuant to M.R. Civ. P. 56. Defendants seek judgment as to all counts asserted against them respectively in the Plaintiffs' First Amended Complaint, Third Party Cross-Claim, and Counterclaim.[1]

## II.    UNDISPUTED FACTS

### A.  The Lease Agreement

On December 30, 2008, One Wallace Avenue, LLC ("One Wallace") and Thee Stewart Group, LLC ("Stewart Group") entered into a lease agreement (the "Stewart Lease" or "Lease") under which One Wallace agreed to lease a portion of its property (the "premises") to Stewart (the "Stewart Lot") for a period of twenty years. (Defs.' Supp. S.M.F. ¶ 16; Pls.' Opp. S.M.F. ¶ 16.) The Stewart Lot is comprised of a 1.28-acre parcel located on the southeastern portion of the premises.[2] (Defs.' Supp. S.M.F. ¶ 17; Pls.' Opp. S.M.F. ¶ 17.) Access to the Stewart Lot

---

[1] As mentioned in Defendants' motions, the claims asserted in the Stewart Third Party Complaint are identical to those asserted in the Stewart Counterclaim and Cross-Claim.

[2] While the Stewart Group leased the land, business operations at the Stewart Lot were conducted solely by Stewart Hauling. (One Wallace Supp. S.M.F. ¶¶ 11-12.)

1

requires travel over the remaining portion of the premises. The Lease provides access to the Stewart Lot through an "Access Drive." Specifically, the Lease provides:

> Tenant's access to the [Stewart Lot] will be over an access drive, in common with others, across Landlord's remaining property, running in an easterly and then southerly direction from Wallace Avenue around the Landlord's other building on Landlord's remaining property to the [Stewart Lot] (the "Access Drive"). The location of the Access Drive is more particularly set forth on Exhibit A.

(Defs.' Supp. S.M.F. ¶ 18; Pls.' Opp. S.M.F. ¶ 18.) Although the Stewart Lease refers to an "Exhibit A" which alleges to visually depict the access drive, there is no evidence that Exhibit A was ever attached to or incorporated into the Stewart Lease. (Defs.' Supp. S.M.F. ¶¶ 19-38.) Plaintiffs and Defendants each submitted conflicting versions of "Exhibit A."[3] Plaintiffs produced an Exhibit A which was labeled "Access Drive" and depicts a solid line drawn from the end of Wallace Avenue around the north side of an adjacent building on the premises to the Stewart Lot.[4] (Defs.' Supp. S.M.F. ¶ 29; Pls.' Opp. S.M.F. ¶ 29.)

In his deposition, Stephen R. Bushey, P.E., the drafter of the Exhibit, had no recollection of whether the plan was attached to the Stewart Lease. In fact, Bushey indicated that he would not depict the Access Drive with a single black line. (Defs.' Supp. S.M.F. ¶ 30; Pls.' Opp. S.M.F. ¶ 30.) Mr. Bushey indicated such an exhibit would typically be accompanied by a metes and bounds description compiled by a surveyor. (Defs.' Supp. S.M.F. ¶ 31; Pls.' Opp. S.M.F. ¶ 31.) The plan provided by the Plaintiffs shows no indication of a metes and bounds description.

---

[3] Neither Mr. Gibson, nor Mr. Stewart recalls whether an "Exhibit A" was attached to or incorporated into the original Lease. (Defs.' Supp. S.M.F. ¶ 21; Pls.' Opp. S.M.F. ¶ 21.)

[4] James C. Conroy, an employee of Stewart Hauling was asked by Plaintiffs to assemble all documents responsive to discovery requests. Mr. Conroy compiled all of the documents concerning the Stewart Lease and had no recollection of whether the Plan was attached to the Stewart Lease. However, he did find Exhibit A in the Plaintiffs' Lease file. (Defs.' Supp. S.M.F ¶¶ 37-39; Pls.' Opp. S.M.F. ¶ 37-39.)

2

B. The Sale

In 2009, One Wallace began leasing space in a building on the premises located adjacent to the Stewart Lot to BWT. (Defs.' Supp. S.M.F. ¶ 49; Pls.' Opp. S.M.F. ¶ 49.) On March 24, 2011, One Wallace sent via certified mail, return requested, a letter to the Plaintiffs informing them that One Wallace intended to sell the premises. (Defs.' Supp. S.M.F. ¶ 52; Pls.' Opp. S.M.F. ¶ 52.) On April 5, 2012, the premises, including the Stewart Lot were conveyed to BWT. (Defs.' Supp. S.M.F ¶ 57; Pls.' Opp. S.M.F. ¶ 57.)

C. The Dispute

BWT's acquisition of the premises was financed by a $6,226,500.00 loan from One Wallace to BWT ("Loan"). (Defs.' Supp. S.M.F. ¶ 59; Pls.' Opp. S.M.F. ¶ 59.) The Loan was secured by a mortgage on the premises, a lease assignment, and Security Agreement granted by BWT to One Wallace. (Defs.' Supp. S.M.F. ¶ 60; Pls.' Opp. S.M.F. ¶ 60.) After purchasing the premises, BWT sought to construct an extension on the north side of the BWT building. (Defs.' Supp. S.M.F. ¶ 61; Pls.' Opp. S.M.F. ¶ 61.) The Extension project was to be financed by One Wallace.[5] (Defs.' Supp. S.M.F. ¶ 64; Pls.' Opp. S.M.F. ¶ 64.) In November of 2013, prior to the commencement of construction, Bryon Tait[6] showed Mr. Stewart the building plans for the extension. (Defs.' Supp. S.M.F ¶ 62; Pls.' Opp. S.M.F. ¶ 62.) The building plans showed that Mr. Stewart's access to the Access Drive would be impaired. Yet, Mr. Stewart made no objection. *Id.* Mr. Tait provided Mr. Stewart with an alternative means of accessing the Stewart Lot. (Defs.' Supp. S.M.F. ¶ 70; Pls.' Opp. S.M.F. ¶ 70.)

---

[5] The financing of the extension is evidenced by an April 5, 2014, Note granted by BWT to One Wallace in the original principal amount of $716, 324.00 (the "Note"). (One Wallace Defs.' Supp. S.M.F. ¶ 65; Pls.' Opp. S.M.F. ¶ 65.)

[6] Bryon Tait is the manager and sole member of BWT. (Defs.' Supp. S.M.F. ¶ 8; Pls.' Opp. S.M.F. ¶ 8.)

Plaintiffs contend that the Stewart's trucks could not access the Access Drive as portrayed by Exhibit A. Defendants contend that Stewart's trucks were never prevented from continuing to access the Stewart Lot via the north side of the BWT building as they had been doing prior to construction of the extension. (One Wallace's Supp. S.M.F ¶ 72.) Defendants further contend that neither Mr. Stewart nor the Stewart entities have been damaged as a result of the construction of the extensions. (Defs.' Supp. S.M.F. ¶¶ 80-82; Pls.' Opp. S.M.F. ¶¶ 80-82.)

## III. STANDARD OF REVIEW

To survive a motion for summary judgment on a claim, "the [party asserting the claim] must establish a prima facie case for each element of [its] cause of action." *Bonin v. Crepeau*, 2005 ME 59, ¶ 8, 873 A.2d 346. Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c). Any findings for the plaintiff may not be based upon conjecture or speculation. *Id.* A "material fact" is one that can affect the outcome of the case, and a genuine issue exists when there is sufficient evidence for a factfinder to choose between competing versions of the fact. *Lougee Conservancy v. CitiMortgage, Inc.*, 2012 ME 103, ¶ 11, 48 A.3d 774. The Court views the evidence in the light most favorable to the non-moving party. *Webb v. Haas*, 1999 ME 74, ¶ 18, 728 A.2d 1261.

Rule 56 requires parties "to come forward with affidavits or other materials setting forth by competent proof specific facts that would be admissible in evidence to show . . . that a genuine issue of fact exists." *Bangor & Aroostook R.R. Co. v. Daigle*, 607 A.2d 533, 535-36 (Me. 1992). "When there is so little evidence tending to show a critical element of a plaintiff's claim that the jury would have to speculate in order to return a verdict for the plaintiff, a defendant is entitled to summary judgment. *Beaulieu v. Aube Corp.*, 2002 ME 79, ¶ 14, 796

4

A.2d 683. However, no matter how improbable a party opposing summary judgment's chances of prevailing at trial seem, a court may not decide an issue of fact; it is only permitted "to determine whether a genuine question of fact exists." *Searles v. Trustees of St. Joseph's College*, 1997 ME 128, ¶ 6, 695 A.2d 1206.

## IV. ANALYSIS

### A. Breach of Lease

In Maine, in order to properly assert a breach of contract/lease claim a party must allege not only the existence of an enforceable contract, but also: "(1) breach of a material contract term; (2) causation; and (3) damages." *Me. Energy Recovery Co. v. United Steel Structures, Inc.*, 1999 ME 31, ¶ 7, 724 A.2d 1248. Plaintiffs have asserted a breach claim against each of the Defendants.[7] The Court analyses the validity of each claim below.

#### 1. *Claims Against Mr. Gibson*

It is well established in Maine that a person who is not a party to a contract cannot be held liable for breach of that contract. "When an agent is not a party to a contract between the principal and a third party, the agent is not liable to the third party for a breach of that contract." *Cnty. Forest Prods. v. Green Mt. Agency*, Inc., 2000 ME 161, ¶ 42, 758 A.2d 59; *Mueller v. Penobscot Valley Hosp.*, 538 A.2d 294, 299 (Me. 1988) (finding a hospital administrator who was not a party to a contract between hospital and employee not liable for breach). In this case, the original parties to the Lease were One Wallace and Stewart Group. One Wallace subsequently assigned its interest in the Lease to BWT, which purchased the premises in 2012. At no time was Mr. Gibson a party to the Agreement in his personal capacity and therefore he cannot be held liable for breach of the Lease.

---

[7] Count II of the Plaintiffs' First Amended Complaint asserts a breach of lease claim against all persons or entities that assumed obligations of the original lessor under the lease. (Compl. ¶ 25.)

5

Further, at all times relevant to this action, Mr. Gibson served as the Manager of One Wallace. In Maine, there is strong public policy that favors treating corporations as separate legal entities with limited liability. *Johnson v. Exclusive Prop. Unlimited*, 1998 ME 244, ¶ 5, 720 A.2d 568. "As such, courts are generally reluctant to disregard the legal entity and will cautiously do so only when necessary to promote justice."[8] *Anderson v. Kennebec River Pulp & Paper Co.*, 433 A.2d 752, 756 n.5 (1981).[9] However, the Law Court has held that the corporate entity can be disregarded (1) if the individual dominated, abused, or misused the corporate form, and (2) if the court's recognition of a separate corporate existence would cause an unjust or inequitable result. *See Exclusive Prop. Unlimited*, 1998 ME 244, ¶ 6, 720 A.2d 568; *see also* 31 M. R. S. § 1544 (noting the limited liability of members and managers of LLCs).[10]

In this case, the Plaintiffs have failed to show any instance of abuse or misuse of the corporate form at the hands of Mr. Gibson that would warrant piercing the corporate veil. Thus,

---

[8] In determining whether a member has abused the privilege of a separate corporate entity the courts will examine a series of factors. For example:

> (1) [C]ommon ownership; (2) pervasive control; (3) confused intermingling of business activity[,] assets, or management; (4) thin capitalization; (5) nonobservance of corporate formalities; (6) absence of corporate records; (7) no payment of dividends; (8) insolvency at the time of the litigated transaction; (9) siphoning away of corporate assets by the dominant shareholders; (10) nonfunctioning of officers and directors; (11) use of the corporation for transactions of the dominant shareholders; [and] (12) use of the corporation in promoting fraud.

*Johnson v. Exclusive Prop. Unlimited*, 1998 ME 244, ¶ 7, 720 A.2d.

[9] *See also Bonnar-Vawter, Inc. v. Johnson*, 157 Me. 380, 387, 173 A.2d 141 (1961) (noting Maine courts will "disregard the legal entity of a corporation . . . with caution and only when necessary in the interest of justice").

[10] The Maine Business Corporations Act states:

> A person who is a member of a limited liability company is not liable, under a judgment, decree or order of a court, or in any other manner, for a debt, obligation or liability of the limited liability company, whether arising in contract, tort or otherwise or for the acts or omissions of any other member, agent, or employee of the limited liability company.

31 M. R. S. § 1544 (2014).

6

the Court grants Summary Judgment as to this claim and to all claims asserting personal liability against Mr. Gibson.[11]

### 2. *One Wallace and BWT Parties*

Plaintiffs claim that both One Wallace and BWT have breached their obligations under the Stewart Lease because the Extension blocks the Plaintiffs' use of the Access Drive depicted in Exhibit A.[12] In support of this assertion, Plaintiffs refer the Court to paragraph 17 of the Lease, which sets forth Plaintiffs' rights to quiet enjoyment of the Stewart Lot. Said reads:

> **17. Quiet Enjoyment.** Landlord agrees that as long as Tenant faithfully performs the agreements, terms, covenants, and conditions of this Lease, Tenant shall peaceably and quietly have, hold, and enjoy the Premises for the Term hereby granted, subject to matters of record, without disturbance by or from Landlord or anyone claiming by, through or under the Landlord.

(Stewart Lease. 10.)

However, in Maine, the covenant for quiet enjoyment can be broken only where the Landlord has actually or constructively evicted the Tenant. *Nat'l Furniture Co. v. Cumberland Cnty.*, 113 Me. 175, 178, 93 A. 70, 71 (1915) ("[A] covenant for quiet enjoyment in a lease is broken only by eviction"); *Boothby v. Hathaway*, 20 Me. 251, 255 (1841). It is settled law that "to constitute an eviction, one must be actually dispossessed by one having the real title . . . . An eviction is not a mere trespass . . . but something of a grave and permanent character done by the landlord for the purpose . . . of depriving the tenant of the demised premises." *Id.* To constitute a constructive eviction, on the other hand, "it must appear that by intentional and wrongful acts the landlord has permanently deprived the tenant of the beneficial use and enjoyment of the

---

[11] The Plaintiffs also assert a claim of tortious interference against Mr. Gibson. For the reasons mentioned above, the Court grants summary judgment as to this claim as well.

[12] The Court foregoes analysis as to whether One Wallace is still obligated under the terms of the Stewart Lease. As mentioned below, even if One Wallace were in both privity of estate and privity of contract with the Plaintiffs, no facts have been alleged on the record indicating a material breach and thus One Wallace cannot be liable for breach of contract.

premises and the tenant in consequence thereof has abandoned the premises. *Robinson v. Great Atl. & Pac. Tea Co.*, 139 Me. 194, 198-99, 28 A.2d 468, 470 (1942).

In this case, there is no evidence to support either an actual or constructive eviction. The Plaintiffs have remained in possession of the Stewart Lot. Further, nothing in the record indicates that the Defendants intended to dispossess the Plaintiffs of the Stewart Lot. Thus, the Court finds that the Plaintiffs' quiet enjoyment has not been disturbed.

The Court further finds that the Plaintiffs have failed to establish that the construction of the extension was a breach of a material term of the Lease. The undisputed facts of this case reveal that BWT promptly notified Mr. Stewart of the construction and Mr. Stewart made no objection. (Defs.' Supp. S.M.F. ¶¶ 62-63.) BWT thereafter offered Mr. Stewart an alternative route through the premises to access the Stewart Lot, which Mr. Stewart agreed to use. (Defs.' Supp. S.M.F. ¶¶ 70.) Because the record is devoid of any factual showing of a breach, which is a necessary element to a breach on contract claim, the Court grants Defendants' Motions for Summary Judgment as to this claim.

B. Tortious Interference with an Advantageous Relationship

Plaintiffs bring action against all Defendants for tortious interference with an advantageous relationship. To show such, the Plaintiffs must demonstrate: "[T]he existence of a valid contract or prospective economic advantage, interference with that contract or advantage through fraud or intimidation, and damages proximately caused by the interference." *McGeechan v. Bangor Real Estate*, 1998 Me. Super. LEXIS 157, at *4-5 (Me. Super. Ct. June 22, 1998).

The Court finds that the Plaintiffs have failed to generate a genuine factual dispute with respect to fraud[13] or intimidation. Plaintiffs contend that the physical blocking of the access

---

[13] The elements of interference by "fraud" include:

8

Drive in and of itself constitutes intimidation. Generally, tortious interference through intimidation "involves unlawful coercion or extortion." *Rutland v. Mullen*, 2002 ME 98, ¶ 16, 798 A.2d 1104. However, the Court recognizes that "intimidation is not restricted to frightening a person for coercive purposes." *Pombriant v. Blue Cross/Blue Shield of Me.*, 562 A.2d 656, 659 (Me. 1989) (internal quotation marks omitted). However, there is no indication that any of the Defendants procured a breach of the lease to compel the Plaintiffs to act in a certain way. In this case, the Plaintiffs were provided with an alternative route to the Stewart lot. A situation that may demonstrate such intimidation would be where a party blocks the only method of access to a particular and vows to continue to block access until some benefit is provided to the blocking party. This is simply not the case.

Finally, a key element of this cause of action is damages. The record is devoid of any evidence that the Plaintiffs suffered any damages as a result of the blockage of the Access Drive. For example, there is no evidence of lost wages, lost profits, or any particular harm. (Defs.' Supp. S.M.F. ¶ 81.) Because the Plaintiffs have failed to make a *prima facie* showing of the claim asserted, the Court grants the Defendants' motions as to these claims.

C. Negligent Interference with an Advantageous Relationship

Count IV of Plaintiffs' First Amended Complaint also alleges negligent interference with an advantageous relationship. However, the Court notes that this cause of action is not currently

---

(1) [M]aking a false representation (2) of a material fact (3) with knowledge of its falsity or in reckless disregard of whether it is true or false (4) for the purpose of inducing another to act or refrain from acting in reliance on it, and (5) the other person justifiably relies on the representation as true and acts upon it to the damage of the plaintiff.

*McGeechan v. Bangor Real Estate*, 1998 Me. Super. LEXIS 157, at *4-5 (Me. Super. Ct. June 22, 1998). There is no indication of any of the Defendants making a false representation of any material fact. The record clearly indicates that the Plaintiffs were aware of BWT's intent to construct the Extension. (Defs.' Supp. S.M.F. ¶¶ 62-63.) BWT allowed Plaintiffs to reach the Stewart Lot through alternative routes. (Defs.' Supp. S.M.F. ¶ 70.)

9

recognized under Maine law. *Rutland*, 2002 ME 98, ¶ 13 n.5, 798 A.2d 1104 (noting the Law Court has never recognized a claim for negligent interference with an economic advantage and the Restatement (Second) of Torts § 766(C) similarly rejects the cause of action); *see also Thomas v. Peabody*, 2009 Me. Super. LEXIS 170, at *20 (Me. Super. Ct. Oct. 14, 2009); *Earl T. & Sandra S. Holdsworti I v. Higgins*, 2010 Me. Super. LEXIS 57, at *22 (Me. Super. Ct. May 13, 2010). This Court likewise declines to recognize this cause of action.

### D. Trespass

In Count V of Plaintiffs' First Amended Complaint, Plaintiffs contend that the actions of the Defendants constitute trespass on and over the land on which the Plaintiffs enjoy certain rights under the Stewart Lease. (Compl. ¶ 32.) The Court assumes, for purposes of this motion that Plaintiffs contend that BWT's blockage of the Access Road constitutes trespass to land.

In Maine, in order to trespass on land, an individual must act "for the purpose of being on the land or know[] to a substantial certainty that [his or her] act will result in physical presence on the land." Further, "the minimum intent necessary for the tort of trespass to land is simply acting for the purpose of being on the land or knowing to a substantial certainty that one's act will result in physical presence on the land." *Gibson v. Farm Fam. Mut. Ins. Co.*, 673 A.2d 1350, 1353 (Me. 1996) (citing Zillman, Simmons, & Gregory, Maine Tort Law § 5.12 at 5-22 (1995)).

Plaintiffs claim that the Defendants wrongfully obstructed the Access Drive. However, the Plaintiffs have a mere non-possessory right to enter and use the Access Drive. The Court agrees with the Defendants that the appropriate cause of action is private nuisance, not trespass. *Fine Line v. Blake*, 677 A.2d 1061, 1065 (Me. 1996) (citing *Graham v. Lowden*, 137 Me. 48, 50, 15 A.2d 69, 71 (1940) ("The obstruction of a right of way which is a mere easement is . . . a

10

common-law nuisance."); *see also Sutherland v. Jackson*, 32 Me. 80, 85 (1850) (obstruction of private way is a private nuisance).

## V. CONCLUSION

Based on the Foregoing, the entry shall be:

The Court GRANTS the motion of Defendants One Wallace, LLC and Marshall Gisbon as to all claims asserted in the Plaintiffs' First Amended Complaint, the Third-Party Cross-Claim of R. Stewart Trucking, Inc. d/b/a Stewart Heavy Hauling, and the Third-Party Complaint of Richard A. Stewart, Jr., Thee Stewart Group, LLC, and R. Stewart Trucking, Inc. d/b/a Stewart Heavy Hauling.

The Court GRANTS the motion of BWT Enterprise, LLC, Bryon Tait, Wendy Tait, and Casco Bay Steel Structures, Inc. as to all claims asserted in the Plaintiffs' First Amended Complaint, the Third-Party Cross-Claim of R. Stewart Trucking, Inc. d/b/a Stewart Heavy Hauling, and the Third-Party Complaint of Richard A. Stewart, Jr., Thee Stewart Group, LLC, and R. Stewart Trucking, Inc. d/b/a Stewart Heavy Hauling.

Pursuant to M.R. Civ. P. 79(a), the Clerk is herby directed to incorporate the Order by reference in the docket.

Dated: June 10, 2015

_____/s_____
**M. Michaela Murphy, Justice**
**Business & Consumer Docket**

11

**Richard A. Stewart, Jr, et al. v. BWT Enterprises, LLC, et al.**

**BCD-CV-2014-46**


**Richard A. Stewart, Jr, et al.**

**Plaintiff**

Counsel:                    William Devoe, Esq.
                                       80 Exchange St.
                                       PO Box 1210
                                       Bangor, ME 04402-1210


**BWT Enterprises, LLC, et al.**

**Defendant**

Counsel:                    David Walker, IV Esq.
                                       84 Harlow St.
                                       PO Box 1401
                                       Bangor, ME 04402